BASTIAN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 148. Argued February 3, 1972.—Decided March 2, 1972.*
(Also reported in 194 N. W. 2d 687.)

---

[3] *Ernst v. State* (1969), 43 Wis. 2d 661, 673, 170 N. W. 2d 713; *McAllister v. State* ante, p. 224, 194 N. W. 2d 639.

For the plaintiff in error there was a brief by *Alexander N. Rubin,* and oral argument by *Jerome F. Pogodzinski,* both of Milwaukee.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J.   Much of the appellant's brief is devoted to the proposition that the defendant was improperly convicted.  Great stress is placed upon the fact that the victim of the sexual assault was a five-year-old boy and that, therefore, his testimony was not to be given credence.  This argument overlooks the fact that no appeal has been taken from the conviction, and no writ of error was timely issued by this court to review the proceedings that led to the judgment of conviction.  We are, therefore, obliged in considering this writ of error to consider only the order brought before us on the writ,

the order which reduced the sentence to an indeterminate term of seven years.

The defendant contends that the term imposed was excessive and that the trial judge abused his sentencing discretion in arriving at that term of incarceration. Although, under the posture of this record, we cannot examine the sufficiency of the evidence which led to the conviction, the nature of the crime was revealed in those proceedings and was before the trial judge when he entered the order modifying the sentence on March 17, 1971.

A brief review of the facts which led to the conviction and which has a bearing upon the imposition of sentence is appropriate.

At the time of the offense, Bastian was twenty-one years old, six feet two inches tall, and weighed 288 pounds. The child who was the victim was five years old. There was testimony that the child was enticed to the defendant's room and subjected to anal intercourse. The child had also testified that Bastian had done the same thing on one previous occasion.

During the course of the trial before the court, the defendant moved to dismiss on the ground that the testimony was incredible and therefore insufficient. The judge, however, denied the motion, specifically making the finding that he found the testimony of the child credible. The testimony was believed and is relied upon to the extent that it is apparent it influenced the trial judge's sentencing discretion.

At the original sentencing proceedings on December 28, 1970, the trial judge read into the record the report of the psychiatrists at Central State Hospital, which concluded that the defendant did not need specialized treatment. He also referred to that portion of the report which concluded that Bastian appeared to be a suitable candidate for probation. The prosecuting attorney stated the seriousness of the offense and the disparity of the

ages between Bastian and the victim of the crime. He also pointed out that the defendant continued to deny guilt and showed no remorse for his conduct. He recommended lengthy incarceration.

The defendant's attorney emphasized the fact that Bastian had been cooperative, that he had a job, and that the crime was not one of violence. In addition, he emphasized that this was Bastian's first criminal offense. The defendant was given the right of allocution but merely denied his guilt. The trial judge stated that, in imposing a period of incarceration, he was not motivated by society's need for retribution nor by the fact that the sentence imposed in this case would be a deterrent to others. He instead predicated his sentence upon the seriousness of the crime and the fact that the incarceration of Bastian would protect society from further conduct of this nature. He specifically disagreed with the department of health & social services' recommendation for probation and pointed out that, since they found him not to be in need of treatment or hospitalization, he would have to be considered as a criminal, and thus to be subjected to criminal penalties on the basis of the crime committed. The defendant was sentenced to a term of ten years.

On March 17, 1971, following the hearing brought upon the defendant's petition to modify the sentence, the trial judge made another lengthy statement giving reasons for the reduced sentence of seven years. He reiterated the factors in the case, including the reports and recommendations of the psychiatrists, and stated that he had the benefit of the arguments made by the defendant's counsel and by the prosecutor. He pointed out that the seriousness of the crime merited a stern disposition and again emphasized that, in this type of crime, where the hospital authorities had concluded that specialized treatment would be inappropriate, the protection of society was a principal factor to be considered.

We are satisfied that the trial judge did not abuse his discretion in imposing the sentence. The seriousness of the conduct of which the defendant was found guilty is emphasized by the legislature's conclusion that it merited a mandatory period of hospitalization and examination. The fact that the examining physicians found the defendant not to be deviated and not to be in need of treatment in no way minimizes the legislature's policy conclusion that the crime was a serious one.

This court has frequently stated that, in the exercise of discretion, a substantial sentence may be imposed to emphasize the seriousness of the crime. In *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1, we upheld a maximum sentence in a fire-bombing case, even though the defendant had no prior record, had served honorably in the military service, and was a married man with children. We concluded that the seriousness of the offense was a proper criterion in imposing a maximum sentence. Moreover, the trial judge in this case emphasized the need to protect society from similar conduct by this defendant. We said in *Buchanan v. State* (1969), 41 Wis. 2d 460, 471, 164 N. W. 2d 253:

"The purpose of the Sex Crimes Act is to protect the public from the commission of dangerous sex crimes and to provide treatment for the dangerous sex offender."

While, in the instant case, treatment for the offender was found to be inappropriate, the necessity of protecting society from such conduct remains. The trial judge properly exercised his discretion when he based his determination upon the fact that Bastian's confinement for a lengthy period of time would, for the term of his incarceration at least, protect society. While the mere warehousing of dangerous individuals is not the sole purpose for imposing substantial prison terms, it is a legitimate and proper factor for a trial judge to consider in exercising his discretion. The seriousness of Bastian's

offense and the necessity of removing him from society is emphasized in an article appearing in the Comments, *Criteria for Commitment under the Wisconsin Sex Crimes Act,* 1967 Wisconsin Law Review 980, 984, 985:

"An offender whose deviant sexual conduct is directed toward others to their physical or moral harm should be regarded as dangerous. If his crime involved violence or aggression, or if there was an age disparity between the offender and his adolescent victim, the offender should be considered dangerous. If the offender's conduct was such that it normally results in severe and enduring harmful effects on the victim, he should be considered dangerous. . . . The taking of indecent liberties with preadolescent children often produces serious psychological problems later in life."

It is apparent that such conduct, though the result of a criminal intent and not of a deviated psyche, is equally dangerous.

Defendant's counsel cites the American Bar Association's *Standards Relating to Probation* (Approved Draft, 1970). One of the standards, 1.3 on page 30, provides in part:

". . . Probation should be the sentence unless the sentencing court finds that:
"(i) confinement is necessary to protect the public from further criminal activity by the offender . . . ."

While the trial judge did not allude to this standard in imposing sentence, his rationale followed that of the standard. He concluded that, although the defendant was a first offender, it was necessary to protect the public from further criminal activity of this nature by George Bastian. The standard that defendant's counsel urges that we apply, when properly considered, in fact dictates the conclusion that this is a proper case not to apply probation. We agree with the standard urged by

counsel and adopt Standard 1.3 in regard to the criteria for granting probation.[1]

The American Bar Association *Standards Relating to Appellate Review of Sentences* were considered and adopted in *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512. The sentence therein was set aside because a search of the record indicated that the trial judge failed to properly exercise his discretion in imposing the sentence. We emphasized in that case, however, that the trial court's sentence would be upheld if the record showed a reasonable process of reasoning based upon legally relevant factors. We said:

". . . all an appellate court can ask of a trial judge is that he state the facts on which he predicates his judgment, and that he give the reasons for his conclusion. If the facts are fairly inferable from the record, and the reasons indicate the consideration of legally relevant factors, the sentence should ordinarily be affirmed. If there is evidence that discretion was properly exercised, and the sentence imposed was the product of that discretion, the trial judge fully complies with the standard." *McCleary, supra,* page 281.

In the instant case, Judge O'CONNELL discussed the facts of record upon which he relied in the exercise of his discretion. We find those facts to be supported by the record and were legally relevant in the exercise of the trial judge's sentencing discretion. The sentence imposed did not constitute an abuse of discretion.

---

[1] "1.3 **Criteria for granting probation.**

"(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that:

"(i) confinement is necessary to protect the public from further criminal activity by the offender; or

The defendant contends that, in a similar case, a defendant only a short time before had been placed on probation. This type of problem was considered in *McCleary, supra,* page 272, wherein we said that a mere disparity of sentences does not establish a denial of equal protection of the laws. We said, "In the absence of a nexus between the crimes and defendants, the disparate sentences are totally irrelevant to this consideration." Other than the fact that the defendant asserts that the charges were the same, the defendant has established no facts to show that the sentence in another case is legally relevant to the sentence imposed in this case.

The defendant was not denied due process or prejudicial error committed because various proceedings in the case were conducted by different assistant district attorneys. In *McCleary,* we have specifically approved the practice of appellate review which requires that our determination of the propriety of the sentencing discretion be based upon the record. We see no reason why a prosecutor cannot be fully informed of the preceding events of the case by reference to the record that has gone before. Defendant's counsel on this appeal was not his trial counsel, yet he apparently feels in no way constrained from expressing his views although they are based solely on the record and his interviews with his client. We see no reason why a prosecuting attorney should be less able to continue a case which has been commenced by another prosecutor.

"(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

"(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

"(b) Whether the defendant pleads guilty, pleads not guilty or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence." American Bar Association *Standards Relating To Probation* (Approved Draft, 1970), p. 30.

Although the assistant district attorney who appeared at the sentencing was not the assistant who tried the case, defense counsel was the same. Defense counsel had a complete opportunity to express his views and to disagree with any of the assertions made by the prosecutor. There was ample opportunity to correct any errors that might have been made by the newly substituted prosecutor. In addition, the trial judge at sentencing was the judge who tried the case. In *Dobs v. State* (1970), 47 Wis. 2d 20, 26, 176 N. W. 2d 289, we said:

". . . the trial judge had many years on the trial bench and has heard countless numbers of criminal cases. We are satisfied that the trial court could and did evaluate the remarks of the assistant district attorney and gave them no undue weight."

The experienced trial judge in this case was also in a position to evaluate the assertions of both the defense and prosecution. Although the views of both were considered, the trial judge relied upon the nature of the offense and upon the record before him. We see no error in the sentencing proceedings, and we are satisfied that the sentence imposed was the product of proper judicial discretion.

*By the Court.*—Order affirmed.